# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

KAREN L. BISHOP,

    Plaintiff,

v.                                            CIVIL ACTION NO. 2:24-cv-115

STATE OF WEST VIRGINIA, et al.,

    Defendants.

## PROPOSED FINDINGS & RECOMMENDATION

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and by standing order it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). [ECF No. 3]. Pending before the Court is the Application to Proceed Without Prepayment of Fees or Costs filed by Plaintiff Karen L. Bishop ("Plaintiff"), who is proceeding pro se. [ECF No. 1]. When a party applies to proceed *in forma pauperis*—meaning, without paying the applicable fees and costs—the Court is obliged by federal statute to screen the case and to dismiss any claim by Plaintiff that is frivolous, malicious, fails to state a plausible claim for relief, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). For the reasons set forth herein, it is respectfully **RECOMMENDED** that Plaintiff's application be **DENIED**, and this action be **DISMISSED**.

### I.

On March 11, 2024, Plaintiff initiated the instant civil action by filing an Application to Proceed Without Prepayment of Fees and Costs [ECF No. 1] and Complaint

[ECF No. 2]. Plaintiff asserts that she owns Star, a four-year-old mare she characterizes as a "federally-protected wild mustang." [ECF No. 2 at 2]. Plaintiff alleges in the Complaint that, on November 29, 2023, she and Defendant Robert P. Valle ("Defendant") entered into a written contractual agreement for Star's transport. The Complaint expressly incorporates this agreement, and Plaintiff attached an unsigned document titled "Contractual Agreement" as an exhibit to her Complaint. [ECF No. 2-1].

The relevant terms of the Contract Agreement (the "Contract") attached to the Complaint provide at Section I that Valle's Transport, LLC—the "Transporter"—agreed to ship Star from a specific address in Saint Johns, Arizona, to another address in Brooker, Florida, "[d]eparting on or about the 15th day of December 2023 and arriving on or about the 15th day of December 2023." [ECF No. 2-1 at § I]. At Section II of the Contract—labeled therein as "Owner Agreement"—Plaintiff as the "Owner," agreed to, among other things, pay "the Transporter the sum [of] $2,000.00 U.S. Dollars for the transport[.]" *Id.* at § II. The Owner Agreement section of Contract included several additional terms, including that "[a] deposit of a minimum of 50% of the shipping fee must be received in advance for the reserving of stalls," with the remaining balance to be paid "at pick-up or at delivery **PRIOR** to unloading any horse[.]" *Id.* The Agreement then stated that "[n]o exceptions will be made[,]" and that [**o**]**nly Cash will be accepted** unless other payment methods have been discussed." *Id.*

The "Owner Agreement" at § II of the Contract included several additional terms which bear potential relevance to Plaintiff's allegations in this matter. One such term, labeled "Other Charges," stated that "[t]he rate [the Owner] are quoted is for the door to door delivery and care of your horse(s)." *Id.* The Contract went on to clarify, "[h]owever,

2

[that] surcharges may apply," including a surcharge characterized as a "hard loader fee" in the amount of "$50 per hour . . . applied after the first 30 minutes of attempted loading or unloading." *Id*. Directly following this term, the Contract states that Owners "are responsible for the loading and/or unloading of horse(s) at pickup or delivery." *Id*. Notably, the Owner Agreement also contained a term expressly stating that "Transporter shall be entitled to a lien against the transported horse(s) for the value of the services rendered and shall be entitled to enforce said lien in accordance with appropriate state laws." *Id*. Finally, the last page of the Contract contains an unsigned space for the electronic signature of Plaintiff labeled "/e/ Karen L. Bishop," as well as an unsigned signature space labeled "(Transporter, Robert P. Valle)," above a printed date of "November 29, 2023." *Id*. at 6.

Plaintiff alleges in her Complaint that, "[d]espite the scheduled delivery date of December 15, 2023" set forth in this Contract, "Robert Valle failed to deliver my beloved horse, Star, as agreed upon." [ECF No. 2 at 1]. Instead, according to Plaintiff, "Valle arrived two days earlier and did not deliver Star as planned." *Id*. While the sparse factual allegations in the Complaint do not address what happened next, it appears that—based upon the context of the Complaint, the attached Contract, and additional facts of which the Court takes judicial notice as set forth *infra*—Plaintiff concedes she was unable to pay the remaining balance at the time of delivery as agreed due to Mr. Valle's unexpected arrival in Florida "two days earlier" than anticipated. *Id*. According to the Complaint, Mr. Valle then chose to not deliver Star and instead transported the mare to Valle's residence in West Virginia. Plaintiff alleges that Mr. Valle's diversion to West Virginia occurred without her consent. *Id*. at 2.

3

Based upon the factual allegations in the Complaint, Plaintiff named five Defendants therein: (1) Robert Valle; (2) Robert Valle, LLC; (3) the State of West Virginia; (4) Dan Holstein, District Attorney; and (5) William S. Thompson, U.S. Attorney. *Id.* at 1. However, in the section of Plaintiff's Complaint labeled "The names of each and every individual who participated in that misconduct," Plaintiff merely names "Robert Valle" as "the primary individual responsible for the misconduct"—along with a vague assertion that "the Boone County magistrate, as a representative of the State of West Virginia, may be considered involved in the misconduct due to actions or omissions that contributed to the failure to deliver Star." *Id.* It appears from context that Plaintiff named the State of West Virginia as a Defendant based upon her allegations regarding the Magistrate in her Complaint. Plaintiff does not name the Magistrate in the Complaint, nor does she set forth any factual allegations in the Complaint to explain the Magistrate's purported involvement in the alleged misconduct beyond the following statements set forth in the next section labeled "the connection between the misconduct and your legal rights," as follows:

> The misconduct directly impacts my legal rights, including violations of my constitutional rights, such as due process or equal protection under the law. Additionally, there are claims for negligence, breach of contract, emotional distress, deprivation of property rights, and failure to provide appropriate remedies.
>
> I assert that Star, as a federally protected wild mustang, is subject to federal jurisdiction and protection. The actions of the defendant, Robert Valle, and the state court in attempting to hold Star or force me to pay without proper regard for federal law are improper and should be challenged. The court lacks jurisdiction over matters involving federally protected animals like Star, and her custody and treatment should be governed by federal law.

*Id.* at 2-3. Aside from these allegations regarding Valle, Valle's limited-liability company, and the Magistrate, the Complaint is devoid of any allegations whatsoever regarding the

two remaining named Defendants, Mr. Holstein and Mr. Thompson. Their purported involvement in the events which give rise to Plaintiff's claims—if any—remains completely unclear.

The last section of the Complaint sets forth Plaintiff's prayer for relief, stating that "I am primarily seeking an order from the court for the immediate release and return of my horse, Star, to my possession." *Id.* at 3. In support of this request, Plaintiff asserts that "[t]his injunctive relief is necessary to rectify the harm caused by the defendclant, Robert Valle, and to restore my property rights." *Id.* Finally, Plaintiff clarifies that "I am not seeking monetary damages at this time, as my primary goal is the prompt and safe return of Star to her rightful owner." *Id.*

In addition to the discussion, *infra*, regarding the substance of Plaintiff's Complaint and the Contract attached as an exhibit thereto, the undersigned further takes judicial notice of the civil action styled *Karen L. Bishop v. Valle's Transport LLC and Robert P. Valle*, filed as Case No. 24-M03C-00008 in the Magistrate Court of Boone County, West Virginia (the "Boone County Case"). *See Brown v. Cabell Cty. Bd. of Educ.*, 3:09-cv-0279, 2009 WL 1470471, at *2 (S.D. W. Va. May 22, 2009) (citation omitted) (explaining that the Court is permitted to take judicial notice of matters of public record). Plaintiff filed the Boone County Case on January 12, 2024—less than two months before she filed the instant action in this Court. Notably, Plaintiff attached a near-identical copy of the same "Contract Agreement" she provided as an exhibit in the instant action before this Court, and similarly alleged that Mr. Valle failed to return Star under the contract.

Mr. Valle answered Plaintiff's complaint in the Boone County Case on February 12, 2024. Therein, Mr. Valle denied Plaintiff's allegations and asserted a counterclaim against

her, claiming that she "still owes me 1,000.00 for original transport." Subsequently on February 23, 2024, Boone County Magistrate Neil Byrnside entered a Civil Judgment Order in favor of Mr. Valle. The Civil Judgment Order expressly stated that "[t]he Plaintiff is to pay $1,000.00 to the Defendant [Mr. Valle] first before the delivery of the horse."[1] Plaintiff then initiated the instant civil action just seventeen days later, on March 11, 2024.

## II.

This court has an independent statutory duty to "screen" the initial filings of pro-se plaintiffs who seek to proceed *in forma pauperis* by assessing the merits of each complaint and excluding those suits lacking an "arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint filed *in forma pauperis* any time it determines that "the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)). The statute also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to liberally construe such complaints. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, this liberal construction requirement does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See*

---

[1] Records from the Boone County Case as referenced herein have been filed on the docket in this matter pursuant to the undersigned's Order, entered contemporaneously with the instant Proposed Findings and Recommendation.

*Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, *supra*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id*.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant law]" will survive a motion to dismiss. *Id*. at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). Moreover, a complaint must state more than "labels and conclusions" and a claim should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. The undersigned has applied these standards in the Court's initial review of Plaintiff's complaint and supplement thereto to determine if any claims should be permitted to proceed.

### III.

As part of its initial screening pursuant to 28 U.S.C. § 1915, this Court may determine whether it has subject matter jurisdiction over the claims asserted by Plaintiff. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) ("Determining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure."). The Court should *sua sponte* dismiss a case when subject matter jurisdiction is lacking. *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988) ("It is always incumbent upon a federal court to evaluate its jurisdiction *sua sponte*, to ensure that it does not decide controversies beyond its authority."). "Federal courts are courts of limited subject matter jurisdiction, and as such there is no presumption that the court has jurisdiction." *Pinkley, Inc. v. City of Frederick, MD.*, 191 F.3d 394, 399 (4th Cir.

1999). Accordingly, "[a] district court has 'an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it.' " *Greene v. Joyner*, No. JFM-17-688, 2017 WL 1194175, at *2 (D. Md. Mar. 30, 2017) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010)). Whether the court has jurisdiction depends upon the allegations contained in the complaint. *See Pinkley*, 191 F.3d at 399 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936) (holding "the party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleadings the facts essential to show jurisdiction")).

Having examined the allegations and requested relief set forth in Plaintiff's March 11, 2024 Complaint, the undersigned **FINDS** that this Court lacks subject-matter jurisdiction over this civil action, and dismissal is proper. The Supreme Court of the United States unequivocally established, in what is known as the *Rooker-Feldman* doctrine, that "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Lucas v. Wayne Cty. Courts*, 3:21-cv-00284, 2021 WL 2585476, at *2 (S.D.W. Va. June 4, 2021), *adopted*, 2021 WL 2581425 (June 23, 2021) (citations omitted); *see also Hulsey v. Cisa*, 947 F.3d 246, 250 (4th Cir. 2020) (holding that the *Rooker-Feldman* doctrine is narrow in scope, but applies whenever a federal district court is asked to exercise "what would be, in substance, appellate jurisdiction over final state-court judgments.") (citing *Thana v. Bd. of License Comm'rs for Charles Cty., Maryland*, 827 F.3d 314, 320 (4th Cir. 2016)); *and Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). In *Exxon*, the Supreme Court explained that federal district courts are precluded from reviewing "cases brought by [1] state-court losers [2] complaining of injuries caused by state-court

judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 284. This jurisdictional bar applies to "issues actually presented to and decided by a state court" and "constitutional claims that are inextricably intertwined with questions ruled upon by a state court." *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997).

Here, Plaintiff satisfies all four elements of *Rooker–Feldman*. First, Plaintiff lost in the Magistrate Court of Boone County, West Virginia, when Magistrate Byrnside entered the Civil Judgment Order ("Order") in favor of Mr. Valle and Valle's limited-liability company. Second, Plaintiff's Complaint in the instant action *sub judice* exclusively and expressly complains of injuries caused by the state court decision itself, as Mr. Valle is permitted by the Order to withhold delivery of Star until Plaintiff pays Valle the remaining $1,000.00 balance of the shipping fee. In her Complaint, Plaintiff asserts that the Order is "attempting to hold Star or force [Plaintiff] to pay" the $1,000.00 balance to Mr. Valle. Plaintiff asserts in the Complaint that the Order constituted error "without proper regard for federal law," because the Boone County Magistrate Court "lacks jurisdiction over matters involving federally protected animals like Star, and her custody and treatment should be governed by federal law." [ECF No. 2 at 2-3]. Turning to the third *Rooker-Feldman* element, the state-court judgment—*i.e.*, Magistrate Byrnside's Order—was final on February 23, 2024, in advance of Plaintiff's filing of the instant action on March 11, 2024. Fourth and finally, Plaintiff is inviting the Court to "readdress the state court finding," by expressly and exclusively seeking injunctive relief that would directly overturn Magistrate Byrnside's Order. Specifically, Plaintiff's Complaint expressly states in the prayer for relief that she "[is] not seeking

monetary damages at this time," but rather seeks "injunctive relief" in this civil action, in the form of "an order from the court for the immediate release and return of . . . Star, to [Plaintiff's]possession"—notably, without *any payments* or other preconditions. *Id.* at 3. Plaintiff's Complaint thus invites this Court to set aside the February 23, 2024 Civil Judgment Order entered by Magistrate Neil Byrnside in the Magistrate Court of Boone County, West Virginia, requiring "[t]he Plaintiff is to pay $1,000.00 to the Defendant [Mr. Valle] *first before* the delivery of the horse." This is just the type of complaint that is barred by the *Rooker-Feldman* doctrine.

Plaintiff makes no claim that she has paid the$1,000.00 to Mr. Valle in support of her request for relief, but rather asserts that the Judgment Order was entered in error because the Magistrate Court of Boone County, West Virginia "lacks jurisdiction over matters involving federally protected animals like Star, and her custody and treatment should be governed by federal law." Plaintiff's vague allusion to federal law, standing alone, does not divest the Magistrate Court of Boone County of jurisdiction. Generally, State courts are courts of competent jurisdiction to hear claims sounding in contract and tort even though a party's claims or defenses involve application of federal law. *See Troyer v. Johnson*, 2:15-cv-11605, 2015 WL 5786794, at *2 (S.D.W. Va. Sept. 30, 2015) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (finding "no reason to doubt the ability of a state court" to handle a personal-injury action turning on the application of a federal regulation, and ruling that "[t]he state court in which the personal-injury suit was lodged is competent to apply federal law")). Moreover, even if the Court assumes, *arguendo*, that Magistrate Byrnside's Judgment Order was entered in error, such a challenge "should be raised on direct appeal" of the

11

Civil Judgment Order pursuant to the West Virginia Judiciary's appellate framework. *See Pearson v. AmeriCredit Fin. Servs., Inc.*, 5:12-cv-09450, 2013 WL 1723635, at *5 (S.D. W. Va. Apr. 22, 2013); *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002) (explaining that "jurisdiction to review such decisions lies exclusively with superior state courts and, ultimately, the United States Supreme Court"). Therefore, the *Rooker–Feldman* doctrine bars this Court from exercising subject-matter jurisdiction over this civil action and dismissal is proper pursuant to 28 U.S.C. § 1915(e).

### IV.

For the foregoing reasons, it is respectfully **RECOMMENDED** that Plaintiff's Application to Proceed Without Prepayment of Fees or Costs [ECF No. 1] be **DENIED**, and this action be **DISMISSED** from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (mailing) from the date of the filing of this Proposed Findings and Recommendation to file with the Clerk of this Court specific written objections identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. A copy of any objections shall be provided to Judge Goodwin and to each opposing party, except that, if any opposing party is represented by counsel, that party's copy should be provided to his or her counsel.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Fourth Circuit Court of Appeals. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).

The Clerk is **DIRECTED** to file this Proposed Findings and Recommendation and to transmit a copy to counsel of record and any unrepresented party.

ENTERED: June 27, 2024

Dwane L. Tinsley
United States Magistrate Judge